LONG v. GUMP.

(Circuit Court of Appeals, Sixth Circuit. April 10, 1906.)

No. 1,504.

BANKRUPTCY—LIEN—NOVATION OF DEBT.

A bankrupt corporation had given purchase money mortgages on certain of its chattel property, and afterward sold the same to another corporation which executed a new mortgage to the mortgagee covering the same and other property. After the bankruptcy, the trustee obtained possession of the property, and by order of the court sold the same free of incumbrances; the mortgagee being given the right to assert his lien against the proceeds. *Held,* that the evidence was not sufficient to show an intention of the parties that the taking of the new security should effect a novation of the debt, but, even if so intended under the circumstances, the trustee having obtained the property, the mortgagee was entitled to enforce his lien against the proceeds.

Appeal from the District Court of the United States for the Northern District of Ohio.

See 136 Fed. 989.

Edwin Mansfield and Brucker & Cummins, for appellant.

Kerr & La Dow, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. The ·Sheets Printing & Manufacturing Company, a manufacturing corporation of the state of Ohio, was duly adjudicated an involuntary bankrupt, and the plaintiff in error, B. F. Long, appointed trustee. In due course the trustee filed his petition in the court below asking that he be authorized to sell the property of the bankrupt, consisting of certain realty, machinery, tools, etc., free from liens or adverse claims of any kind. This petition stated that the appellee, A. W. Gump, "claims some interest or lien upon one Potter Sales Book Press, one Harris Rotary Sales Book Press and attachments, one Sheridan Paper Cutter and one Stitching Machine," for which an order of sale was asked, and prayed that Gump be required to come in and assert his claim, or be forever barred. Gump accepted this invitation and voluntarily came in and set up certain promissory notes made by the bankrupt and secured by chattel mortgage upon the machines mentioned in the trustee's petition, and that these notes and mortgages had been duly assigned to

him. He asked that his answers be filed as cross-petitions, and that his mortgage liens be enforced and proceeds of sale of the mortgaged chattels be first applied to the payment of his said claims. Subsequently the bankrupt's property was ordered to be sold free from all liens, and by agreement it was ordered that the liens claimed by Gump upon the specific machinery described in his two mortgages should be transferred to the fund arising from the sale of the specific property. The claims and liens asserted by Gump are: First, a note for $513.75 made by the bankrupt to the Harris Press Company, and secured by a chattel mortgage upon the Rotary Sales Press and certain appurtenances referred to in the trustee's petition. Second, six promissory notes made by the bankrupt corporation to the Potter Printing Press Company, each for $875 and secured by a chattel mortgage upon the Potter Sales Book Press referred to in the trustee's petition. These mortgages were duly executed and recorded according to the law of Ohio, and both the notes and mortgages Gump averred had been duly assigned to him for a full consideration and were due and unsatisfied. The trustee answered Gump's petition and denied any indebtedness, or that he had a lien upon the machinery referred to. The real defense relied upon is that there has been a novation whereby the bankrupt's original debt upon the notes mentioned has been satisfied by the acceptance of the obligation of another corporation, styled the "Sheets Sales Book Company," and that Gump accepted the promise of the Sheets Sales Book Company to pay the debt asserted against the Sheets Printing & Manufacturing Company, and accepted a mortgage made by said Sheets Sales Book Company upon the same machinery and certain additional chattels in full satisfaction and payment of the notes and mortgages he now asserts against the bankrupt corporation.

The referee, in respect to this defense of novation, found upon all of the evidence:

(1) That the notes asserted by Gump had been duly executed to the respective payees therein named for the price of certain machinery, and that chattel mortgages had been duly executed by the said bankrupt upon the specific machinery so purchased to secure the payment of the purchase money notes.

(2) That on November 25, 1903, Gump borrowed the money and purchased the notes so made and took an assignment of each of said notes and of the two mortgages mentioned.

(3) That A. W. Gump and certain other persons, shareholders in the said Sheets Printing & Manufacturing Company, organized a new corporation styled the "Sheets Sales Book Company"; that on November 25, 1903, the Sheets Printing & Manufacturing Company, the bankrupt, and hereafter referred to as the bankrupt, sold and transferred to this new corporation, in consideration of $12,000 paid-up preferred stock, certain machinery, tools, and equipment, including the specific chattels covered by the two mortgages so previously assigned to Gump.

(4) That on December 3, 1903, the Sheets Sales Book Company, of which the petitioner A. W. Gump was secretary and treasurer,

executed a chattel mortgage to said A. W. Gump conveying to him the same chattels included in the mortgages of the bankrupt and in addition certain other chattels, being the stitching machine, stereotyping machinery, etc., mentioned in the trustee's petition as chattels upon which Gump claimed some lien. This mortgage recites that the conveyance is made "for the purpose of securing four certain promissory notes of even date therewith, one for $1,335.68 and three for $1,500.00 each, being a total of $5,835.68."

(5) The affidavit annexed to this instrument required by the Ohio law to secure its registration was made by A. W. Gump and recites that he has a valid claim against the within named mortgagor, the Sheets Sales Book Company, aggregating $5,835.68, and that said claim is just and unpaid and the mortgage given to secure same.

(6) The referee also reports that in fact no notes were ever executed by said Sheets Sales Book Company.

(7) Next in order of time was the appointment of a receiver by a state court for the bankrupt corporation. This appointment was made upon an application made by Gump and others on December 29, 1903.

(8) January 3, 1904, Gump filed with the township clerk the assignments of the chattel mortgages made to him by the Potter Printing Press Company and the Harris Automatic Press Company. At the same time he filed the chattel mortgage given him by the Sheets Sales Book Company. The referee further reports and finds that:

"After having filed the assignment and his new chattel mortgage, Mr. Gump took from the files of the township clerk the chattel mortgages that had been assigned to him leaving on the files the assignments to him."

These transactions all took place at the same visit of Gump to the office of the clerk. "The clerk thereupon without any instructions from Gump marked on his record the chattel mortgages taken from the files by Mr. Gump, canceled. These chattel mortgages were kept from the files for a week or ten days and were then returned by Mr. Gump to the clerk, who was then told by Mr. Gump that he had taken them off for temporary purpose only, whereupon the clerk erased from his record the words or letters he had written indicating that they were canceled." He further finds that no one was misled or prejudiced by the withdrawal of said mortgages.

(9) In respect to the purpose of Gump the referee found as follows:

"I further find from the evidence that the chattel mortgages taken from the files by A. W. Gump were so taken for temporary purposes only, and at the time they were taken the Sheets Printing & Manufacturing Company was in the hands of a receiver by the consideration of the court of common pleas of Richland county, Ohio. I further find from the evidence that the chattel mortgage executed by the Sheets Sales Book Company, in favor of A. W. Gump, and by him filed with the township clerk, was given for the purpose of better protecting the interests of said Gump and was so received by him and was not intended by the parties as a payment of the notes and mortgages that has been assigned to said Gump."

It was therefore ordered that the proceeds arising from the sale of the chattels described in the mortgages made by the bankrupt be

applied upon the claims secured by the respective mortgages. Upon a review duly had upon an entire transcript of the evidence this order or decree was affirmed by the district court.

The question as to whether the obligation and mortgage of the Sheets Sales Book Company was substituted for the obligation and mortgage of the Sheets Printing & Manufacturing Company in such form as to extinguish the debt and cancel the mortgage of the latter corporation is at last one of intention. The Sheets Sales Book Company acquired the machinery covered by the two chattel mortgages of the Sheets Printing & Manufacturing Company through a purchase from that company with notice of the mortgage thereon and therefore subject to them. While there is no direct evidence that the purchasing corporation agreed to assume and pay the mortgage debt against the machinery so purchased, yet it is fairly inferable that the expectation was that it would assume and pay the debt. Nevertheless there was no direct evidence that Gump expected to relieve or discharge the liability of the bankrupt corporation to him, even though the new company might undertake the payment of his debt.

The mere taking of another mortgage upon the same and additional property from the purchasing corporation would not be at all conclusive upon the question of whether the intention was to substitute the last for the former. It might well be, as testified to by both Gump and his attorney, Le Dow, that the latter was taken as additional security. The recitation in this later mortgage that it was intended to secure notes made by the mortgagor to the mortgagee aggregating the amount of the debt of the bankrupt corporation to Gump would tend to show a novation. But this intention so far as novation would be implied by such conduct was in fact never carried out. No such notes were ever made, and the notes of the bankrupt corporation were never surrendered. The fact that, when the new mortgage was filed, the old mortgages were withdrawn, if unexplained, would strongly show an intent to substitute the new security for the old. But under the law of Ohio the withdrawal of an instrument from the files for a temporary purpose will not operate as a cancellation. Wilson v. Leslie, 20 Ohio 161; Stevenson v. Colopy, 48 Ohio St. 237, 27 N. E. 296. It was therefore open to Gump to show that he took the old mortgages from the files for a temporary purpose only. This he did by his declaration when he returned them to the files, by his testimony that he took them at request of his counsel that he might examine them and by the testimony of his counsel that he requested him to bring them to him for examination.

No rights had accrued to any other person while the mortgages were thus withdrawn. The fact was therefore one open to explanation. Indeed all of the facts tending to show novation were in themselves explainable. Both Gump and Le Dow, his legal adviser, testify that there was no intent to relieve or discharge either the bankrupt corporation as a debtor or its mortgages. Upon the contrary, they testify that the purpose was to increase the security for the ultimate payment of the debt. That the debt has never been paid by either corporation is not denied. That Gump raised the money and

paid the notes of the bankrupt corporation taking an assignment of the notes and mortgages to himself is clearly shown. Doubtless novation may be shown from circumstances and deduced from facts not directly establishing it. Nevertheless, when it is sought to show an intent to substitute one debtor for another or one security for another, the intent that novation shall occur should be the only reasonable inference from the facts relied upon.

The referee and the district judge concur in finding that there was no intention to novate. The actual facts are not inconsistent with this conclusion and present no such clear case as would justify a reversal. This result is not inequitable. If novation was made out it would be because we should find that there had been an effectual substitution of a mortgage upon the same property by the Sheets Sales Book Company. But the trustee of the bankrupt corporation recovered the mortgaged property from the Sheets Sales Book Company, to whom it was sold by the bankrupt, under an agreed decree in the Richland county court of common pleas by which that corporation surrendered any right it had acquired and consented to a return of the property to the appellant trustee as the representative of the Sheets Printing & Manufacturing Company. This undid that sale and restored the status quo as between vendor and vendee. But that decree provided that all liens claimed on any of said property should be unaffected by this surrender and their validity determined in the bankrupt court. It was for this reason that the trustee asked leave to sell the property free from all liens, and that the court ordered that all liens should be transferred to the fund. The fund is now in court. About the honesty of Gump's debt there is no question. That he had and has a good lien upon the fund by reason of the bankrupt's mortgages, unless there has been an effectual substitution of the mortgage of the new company for those of the old, there seems no reason to doubt. He ought not to be juggled out of his security by his reliance upon one rather than the other of his securities under the situation of matters here. The parties are all before the court. The fund upon which the lien exists is subject to the order of the court. The decree complained of applied the fund arising from the sale of the mortgaged chattels upon Gump's mortgaged debts.

The result is right novation, or no novation, and should not be disturbed.

Affirm the judgment.